UVALDE ASPHALT PAVING COMPANY, PLAINTIFF IN ERROR, v. CENTRAL UNION STOCK YARDS COMPANY, DEFENDANT IN ERROR.

Argued December 2, 1912—Decided March 3, 1913.

A contract provided for final payment upon the completion of the work to the satisfaction of the engineer of the defendant to be evidenced by his certificate and also contained an arbitration clause for the final settlement of all disputes as to the performance of the agreement. The engineer declined to certify upon the ground of non-performance and the contractor demanded arbitration, obtained an award and brought suit upon the contract. A verdict against the plaintiff was directed for its non-production of the engineer's certificate and its non-performance of the contract. *Held*—

(1) That as to matters covered by the award the certificate of the engineer was not required by the contract.

(2) Questions of fact, however disproportionate may be the weight of the evidence, are for the jury.

(3) The rule that a verdict should be directed where any number of opposite verdicts would be set aside, has no application where the sole question is the weight of the evidence.

---

On error to the Hudson Circuit Court.

For the plaintiff in error, *Gilbert Collins* and *R. Floyd Clarke* (of the New York bar).

For the defendant in error, *Carrick & Wortendyke.*

The opinion of the court was delivered by

GARRISON, J. In this case the action is brought by a paving company to recover from the defendant the balance of the price of certain work executed under a contract between them. The work consisted in the paving of the defendant's stock yard. The defences were that the certificate of the defendant's engineer was not obtained as required by the contract, that it was not waived, and that the work was not substantially performed by the plaintiff or accepted by the defendant. With respect to the engineer's certificate the contract contained these provisions. The eighth section provided: "In case of any disagreement or dispute between the contractor and the stock yards company respecting the true construction or meaning of any specification, map, profile or plan, the same shall be referred to and decided by the engineer, and his decision shall be final and conclusive; but should any disagreement or dispute arise relating to the true performance of any covenant or agreement, or the true value of extra work, because of a written requisition under the third mutual covenant, then and in either of such cases such disagreement or dispute shall be referred to three arbitrators, one to be selected by each of the parties, and the third to be selected by the two selected by the parties, and the decision in writing by a majority shall be final. Each party hereto shall pay one-half the expense of such reference."

The specification as to "payments" provided: "The balance, including the twenty per cent. reserved each month, to be paid upon the completion of the work to the satisfaction of the engineer, to be evidenced by his certificate to that effect."

There was testimony from which a jury might find that the work when completed met with the apparent approval of the engineer and of his authorized representatives who had supervised it, and that a bill based upon estimates furnished by the latter with the statement that the work was

"complete and satisfactory" was sent to the defendant in July, 1909, and was followed by some correspondence that related only to the time and method of payment.   On August 17th the plaintiff was for the first time reminded that no certificate had been given by the defendant's engineer, and was then likewise apprised that there were indications that the work had not been satisfactorily done.   This communication of the defendant was immediately followed by a letter from its engineer in which he stated that the specification that the interstices between the blocks be completely filled with cement grout had not been complied with.   The plaintiff thereupon brought suit on the contract, not the present action, but an earlier one, in which the defendant set up by plea the failure of the plaintiff to procure the arbitration provided for in the eighth section of the contract.   Upon demurrer it was held by the Circuit Court that a compliance with this provision by the plaintiff was a condition precedent to its right to maintain an action.   Plaintiff thereupon discontinued its suit and proceeded to arbitrate the dispute as provided in the contract. As this dispute involves the substantial controversy, it will be well at this point to state precisely of what it consisted. The contract specified as follows:   "The proposed pavement shall consist of selected blocks, laid so as to form a fairly uniform level top; they shall be laid on a sand bed one inch thick; after the paving is completed, it shall be rammed to a uniform even surface, satisfactory to the engineer or his inspector, and after having been so rammed it shall be immediately covered with a Portland cement grout, consisting of one part Portland cement and two parts clean, sharp sand. This shall be spread dry over the pavement, leaving a surplus of at least one-eighth inch to one-quarter inch in thickness. Water shall then be added, and with the aid of brooms this grout shall be swept over and all about on the paved surface until the joints and interstices between said blocks shall be completely filled.   No blocks with badly broken faces will be accepted."

After the plaintiff had completed the pavement, and after

the defendant had begun using it for the yarding of cattle, it was claimed that the cement grout (a semi-fluid mixture of sand and cement) had not penetrated to the entire depth of the interstices between the blocks owing to the rising in such spaces of the sandy subsoil on which the pavement was laid, caused by the nature of the soil, the ramming of the blocks and the putting on of the grout before the soil had subsided or dried out of the interstices. The plaintiff contended that it had performed the work in compliance with the specifications, that this and not the result obtained was the measure of its duty, that it was not responsible for the nature of the subsoil and that the ramming of the blocks and the putting on of the grout "immediately" were expressly required by the contract.

The defendant, on the other hand, contended that in addition to what was detailed in the contract the plaintiff in order to perform properly what was specified should have raked out the sand from the interstices before putting on the grout. This was the dispute at the time the first action was brought, and was the ground of the engineer's refusal to certify. After the first action was discontinued this precise dispute was submitted to arbitrators appointed under the contract whose award sustained the plaintiff's contention as to all points, *i. e.,* both as to its duty under the contract and its true performance thereof.

Upon the trial of the present action, which like the earlier one was upon the contract, the plaintiff offered this award in evidence, and upon the objection of the defendant that it was immaterial, irrelevant and incompetent the court refused to admit it as testimony to go to the jury, holding that it presented a question for the court. No exception to this ruling was taken, but the legal question that has been argued is adequately presented by the exception upon which error is assigned, viz., the direction of a verdict for the defendant, for the substantial question is not the ruling upon the admission of evidence, but the propriety of directing a verdict in view of the court question involved. The first has become aca-

demic by the course pursued at the trial, the latter is the substantial question in view of such judicial course.

Our present concern, therefore, is with the directed verdict which was ordered upon two grounds—*first,* that the defendant had not waived the certificate of the engineer, and *second,* that the plaintiff had not substantially performed the contract; upon both of which points the trial judge felt constrained to take the case from the jury because of what he considered to be the overwhelming weight of the evidence. While these questions were thus taken from the jury the award, which admittedly presented a question of law for the court was apparently not considered, certainly was given no controlling effect.

In each of these respects error was, we think, committed.

In view of the conclusion we have reached upon the legal question touching the award the error of taking the case from the jury upon the questions of fact may be dismissed with the remark that the rule of *Baldwin* v. *Shannon,* 14 *Vroom* 596, with respect to the direction of a verdict where any number of opposite verdicts would be set aside upon rules to show cause, has no proper application to trials where the sole question is the mere weight of the evidence. That the criterion thus set up is not the rule to show cause that is made absolute, because the verdict is against the weight of the evidence, is clear from the fact that in such cases the second of two concurring verdicts upon the same evidence is not thus disturbed. *Brown* v. *Paper Company,* 40 *Id.* 474.

In *Horandt* v. *Central Railroad Co.,* 52 *Vroom* 488, it is categorically stated in the headnote of the opinion of this court that "The mere fact that the Supreme Court on rule to show cause has seen proper, in the exercise of its discretion, to award a new trial to defendant because of the verdict being against the weight of evidence, will not justify the direction of a verdict for defendant at a second trial, on the same or similar evidence, where a substantial conflict is presented." To warrant a nonsuit at the trial or the direction of a verdict something more than the mere weight of the evidence must be involved. A verdict that is against the weight of evidence

is sufficiently controlled by the subsequent power of the court over its own verdicts; if concurring verdicts on the same evidence will not be permitted to stand, it is because something more is involved.

The legal question as to the effect of the award involves primarily the construction of the contract. The award is provided for by the contract, and so likewise is the certificate of the defendant's engineer. Both cannot prevail. It is evident therefore that a judicial construction of the section of the contract already quoted is required. The first provision of section eight presents no difficulty. This provision refers to a difference of opinion as to the meaning of maps, profiles, working plans or what not arising during the progress of the work and requiring to be decided promptly and authoritatively as a guide in its further prosecution. No question under this provision is involved in the present case.

The second provision of this section is of far different import, and includes within its scope any dispute as to any matter respecting the true performance of the agreement regardless of the period at which such dispute arises. There is no conflict between these two provisions, since they refer to different things, hence no construction is called for. When, however, we come to the specification that provides for the payment of the balance of the contract price "upon the completion of the work to the satisfaction of the engineer, to be evidenced by his certificate to that effect," construction is necessary to obviate an *impasse* that was evidently not intended by the parties.

Of such an *impasse* a perfect illustration is afforded by the present case in which a dispute as to the performance of the contract has been finally settled in the manner provided by the contract in favor of the plaintiff who, notwithstanding that such award is binding upon the defendant, is denied recovery in a legal action because the defendant's representative refuses to certify. This anomaly of a stream rising higher than its source suggests at once that the proper construction of these apparently conflicting provisions is that as long as

the defendant is free under the contract to dispute its true performance, his representative may withhold his certificate, but that when under the terms of the contract the defendant is no longer at liberty to dispute performance, his representative has no authority to do in the interest of his principal that which the principal itself cannot do. The plain reason for this is that the representative who is authorized by the contract to protect the interests of one of the parties derives his authority from both of the parties, and hence an act of his that is not contemplated by the contract stands on the same footing as any other act done without authority, and the contract does not contemplate that such representative shall have authority to do on behalf of a party that which such party is bound by the contract not to do in his own behalf.

From this it follows that a defence that the defendant itself could not make because of estoppel, waiver, *res adjudicata* or, as in the present case, an award under the contract, cannot be made for him by his representative under the contract. In a sense such an act of the representative is, as one of the English cases terms it, *ultra vires;* and, from another point of view, the effect given to the arbitration clause by the contract is such that the award, as to matters concluded by it, is a waiver by operation of law of the engineer's certificate.

So that if a contract provides for final payment upon the completion of the work to the satisfaction of the defendant's representative, to be evidenced by his certificate, and also contains an arbitration clause for the final settlement of all disputes as to the performance of the agreement, and the certificate is refused and an award of true performance obtained by the plaintiff, the absence of the certificate is not conclusive against the plaintiff's right to recover, it not being within the contemplation of the parties, on a proper construction of their contract, that under such circumstances the production of the certificate would be required. In such case the certificate is in effect waived by operation of law.

This construction of the contract which is reinforced by the strong presumption that as between a mere agent of one

party and a judicial tribunal acting for both parties the latter was intended to prevail, has been applied in a case where the representative of the defendant had actually given to the plaintiff the required certificate pending a dispute as to the true performance of the contract which was afterwards decided by an award in favor of the defendant. In this case, which is the antithesis of the one before us, it was held that the certificate was not conclusive against the defendant by whose representative it was given.

The case is *Lloyd Bros.* v. *Milward,* in the English High Court of Justice (Court of Appeal), reported at length in 2 *Huds. Bldg. Con.* (2d ed.) 454.

Upon principle this decision is directly in point, following in this respect the decision of the same court *In re Hohenzollern Co.,* reported in 2 *Huds. Bldg. Con.* 21. This latter case is also authority for the proposition that where such an award does not cover all that the plaintiff must prove in order to recover, his failure to sue upon it is not evidence of an abandonment as is argued before us in the present case. Our conclusion is that the plaintiff was right in bringing this action on the contract, and in treating the award as evidence upon the non-production of the engineer's certificate as well as upon the question of true performance of the contract in so far as the matters covered by the award were involved in this point. Upon each of these questions the award was material, relevant and competent evidence; whether it was not also conclusive is not now before us for decision, owing to the manner in which the legal question is presented.

The trial judge erred, therefore, in directing a verdict for the defendant even if he was right in considering that the award presented a question for the court rather than for the jury, a question that is not raised by any exception. So that if the answer to this question also is pointed out by our present decision it is by way of logic and not by way of *dictum.*

The judgment of the Circuit Court is reversed and a *venire de novo* awarded.

*For affirmance*—None.

*For reversal*—THE CHANCELLOR, CHIEF JUSTICE, GARRISON, SWAYZE, TRENCHARD, BERGEN, MINTURN, KALISCH, BOGERT, VREDENBURGH, CONGDON, TREACY, JJ.   12.